Good morning. Daniel Ball on behalf of the appellant Benjamin Quinn McChesney. May it please the court, counsel. The district court proceedings were characterized by a fundamental disregard of Mr. McChesney's right to present a fair trial. There are numerous claims of error presented by Mr. McChesney at the district court level and on appeal. The general basis of these claims of error are the district court's disregard for Mr. McChesney as a pro se defendant and for his ability to prepare an effective defense. That's demonstrated by the court's essential refusal to allow him to represent himself. Mr. McChesney was denied with the core legal functions of preparing and presenting a defense. This is shown by his lack of access to legal research capabilities, his lack of access to witnesses, to potential witnesses, to potential expert witnesses, and his basic denial of even the right or the ability to contact witnesses who were housed in the same jail as he was. In that respect, you're talking about Romero? I'm sorry, Your Honor? Are you talking about Romero? Mr. Romero and also Ms. Barton. Mr. McChesney's sister, Michelle Barton, was actually in jail at the same time as Mr. Romero. But for how long was Ms. Barton there? Approximately a day, a little bit less than a day. So you're not seriously claiming that your client didn't have access to his sister for the rest of the time? He didn't have access to her. He didn't have access to her in the jail for the one day she was there, right? That's correct. Okay. He didn't have access to her up to that point because he was not able to make unrecorded phone calls. He was placed in solitary confinement at the jail. Let me ask you about Romero. As I read the record, Romero's counsel maintained throughout that Romero would not talk to your client. That's true, Your Honor. Okay. So how was he prejudiced by his inability to contact Romero when they were both housed in the same jail? It's my understanding that Mr. Romero advised his counsel to speak with Mr. McChesney multiple times, and that that was brought up before the district court at a hearing to have Mr. Merchant, Romero's counsel, fired his counsel. As far as the prejudice, Mr. McChesney was housed in the same facility. Mr. Romero, even if he was a co-defendant, was still a potential witness, regardless of representation. No, but I guess my — as I read the record, Romero's counsel had advised him not to talk to Mr. McChesney. Is that fair? That's probably true, Your Honor. And so is there any indication that he was going to disregard counsel's advice and talk to Mr. Romero, Mr. McChesney? There is. Not on the excerpts of record we filed. We didn't have access to what occurred at the hearing to have Mr. Merchant fired. But it's my understanding that Mr. Romero did want to speak with Mr. McChesney, but Mr. Merchant, his attorney, was kind of the buffer. But there's nothing in this record that tells me that. That's correct, Your Honor. But that does not — Am I just — finish your answer, I'm sorry. Yes. Mr. Romero is one of many witnesses, potential witnesses. There was Lindsey Schmeng, there was Michelle Barton, there were potential other witnesses. Romero is just one of numerous. But I need to understand your claim of denial of access to witnesses, because I don't see anything in this record that says phone calls couldn't be accepted, correct? That's correct. But nothing in this record that says visitors couldn't make an appointment, whatever the jail does, come in and talk to Mr. McChesney? That's correct, Your Honor. So isn't the inability to contact witnesses a necessary consequence of his incarceration pretrial? The district court should have made arrangements for these type of accommodations to have been made. And did anybody go to the district judge and say, Mr. McChesney is trying to contact this witness, but the jail is in his way, can you please order the jail to do something? Suggesting the court should have done that sua sponte? The most telling incident of that would be going back to the Michelle Barton incident, where she's incarcerated the day, the second or third day of trial. Mr. McChesney requests on that day to speak with her at the jail. The court says, yes, you can do that if it can be accommodated. It was not accommodated. Mr. McChesney goes in the next day and advises the court, Your Honor, I was not able to meet with Ms. Barton. And the court says at that point she's no longer incarcerated, right? She was not incarcerated, but she was present. Okay. And so she at the trial? Yes, sir. And he had no ability to talk to her at the trial? That's correct. He asked for a mere 15 minutes, and the court said, we've got to keep moving. Denied. But on this point about, isn't it correct that the district court approved $2,400 for your client to hire an investigator, but your client never did that? An investigator was retained. The investigator did meet with Mr. McChesney, and it gets somewhat conflated because there are two pending cases for a time, but the investigator did meet with Mr. McChesney at the jail, and they kind of butted heads. They didn't get along. Well, he could have gotten another investigator, but the district judge did that in part so witnesses could be contacted. And your client was in jail. You're right. He's access to witnesses is somewhat impeded, but he had an investigator to do it. Did he try to substitute? He did not. Or seek more money? He did not. The issue with Mr. McChesney was, as a pro state defendant, he was very committed to preparing and trying this case on his own without third parties, without assistants. And so his desire was to be able to do this himself. He was the one. He expressed to the court, I want to contact witnesses. I want to meet with witnesses. I want to speak to them on the phone, not have investigators do this for him. Well, but he was incarcerated. Are you challenging the grounds of his pretrial incarceration? I'm not challenging that, Your Honor. I'm challenging the lack of accommodations that was made to him as a pro state defendant. Well, getting away from witnesses at the moment, isn't it correct that he was allowed to keep discovery in his cell? That is correct. All right. Now, can you point to any prison regulation that would apply to all prisoners that he was denied? That is, any instance where the prison specifically said that he couldn't have something that other prisoners could have? Not at that particular facility. At the local county detention facility, he was denied not an applicable rule. The issue with Mr. McChesney, though, is that he was placed in solitary confinement. And so his access, basically his ability to be out and preparing a defense, contacting witnesses, was severely restricted. The record indicate why he was placed in solitary confinement? It does not. Was the solitary confinement challenged? During the course of the case? Did anybody go to the judge and say, my client's been inappropriately placed in solitary confinement? Well, nobody would have said my client because he was. I understand. So did Mr. McChesney, one of the dangers of self-representation, of course, is that you don't know how to make claims. But did Mr. McChesney ever go to the judge and say, I was inappropriately placed in solitary confinement? He didn't say he was inappropriately placed, but he did raise that issue. And he said, Judge, I'm in solitary confinement. And that, in and of itself, precluded his access to make phone calls, to have access to the court. I'm just not clear why that's the case. I mean, it surely precluded his access to other inmates. But while in solitary confinement, did he attempt to contact the jail facilities and say, there's a call I want to make or there's an appointment I want to have? I can't find any of that in the record. I'm not aware of that in the record, Your Honor. I mean, all I can tell from the word solitary confinement was that he was confined by himself. It doesn't necessarily tell me that he was prevented from making contacts with others. That's correct, Your Honor. And that's not in the record, the details of the confines of solitary confinement. However, he did make it clear to the court that he was basically held, secreted away from anybody, away from witnesses, away from any means. Can I ask you to shift to a much later part of the case? And I want to talk about the alleged statement in front of the jurors. Yes. Would you tell me, first of all, does this record tell us who the affiant was? Are you – and I'm sorry, Your Honor. Are you speaking about the comment by the court or the third party? The third party. Okay. I'm not talking about the court's comment. I understand your argument on that. You have an argument that a third party affiant presented an affidavit that said something occurred within the hearing of several of the jurors. Julie Lennick. That's Julie Lennick. My first question is, with respect to Ms. Lennick, does the record reflect whether she has any relationship at all with the defendant? She has no relationship with Mr. McChesney. Well, I'm asking what the record reflects. And I don't know that the record reflects that. Record doesn't seem – I couldn't find anything in the record with respect to that. I've got her affidavit right here. And the first thing is, the verdict – did you want to answer that? Well, let me just – I want to make sure I have the – I want to make sure I have the sequence correct. She says she was present for the proceedings on July 8th through 10th. The verdict came down on the 11th, correct? Yes, sir. Okay. And she said she was – she knew a person to be Krista McFerrin, who made certain comments. Is there – and again, the record on this is very limited. I'm just trying to find out whether there's any indication that she had a relationship with Ms. McFerrin, that Ms. Lennick – The record does not reflect that, Your Honor. And that's part of the problem with this, is that we believe that Mr. McChesney was entitled to a hearing to flesh these issues out. Okay. And that's – that was – and I'll cede the field to Judge Bailson in a second. But what are you seeking here? What are you seeking here with respect to this incident? With respect to this incident, I think we're well past the point where there can be a remedy. With respect to this – Why? Why? Can't the district judge have a hearing, determine what occurred? It may not have occurred. He may disbelieve it. There may have been other witnesses. The judge suggested there were probably court personnel present. Why isn't – if, at most, aren't you just simply entitled to a hearing on this issue? We are certainly requesting a hearing. But that's our problem, because at this point, we're two years, essentially, past that point. Memories fade. Witnesses come and go. Basically, at this point, the witnesses we'd be able to track down would be Ms. Lennick and court personnel. It would be hard to go to these people now. Don't we know the jurors' names? I'm sorry, Your Honor? We know the jurors' names, do we not? Yes, sir. We could. Well, do you – first of all, you're sure the verdict was July 11th? Yes. Okay. Now, in her affidavit, she says, in paragraph 5, I was present during a break or trial on or about July 10th. Now, you're aware that this affidavit was not filed until September 28th. That's approximately 80 days later. Is that correct? Yes, sir. The record doesn't show any reason for the delay. Is that correct? That's correct. Okay. Secondly, as Judge Hurwitz pointed out, her affidavit doesn't show whether or not she has any relationship to the defendant. That's correct. All right. And the record also doesn't show how she learned that Krista McFerrin was – who Krista McFerrin was. Is that correct? That she testified in the affidavit that I know Ms. McFerrin. All right. Now, it mentions Michelle Barton, who the record does show is the defendant's sister, right? Yes, sir. All right. But there's no reason why there's no affidavit for Michelle Barton, who, according to the Lennox affidavit, was present when this – these jurors – when the jurors were present. Is that correct? That is correct. And the record doesn't show why Michelle Barton didn't file any kind of affidavit? Yes, sir. Okay. Now, with all those factors, why was it not within the discretion of the district court to – which I think is the standard of review here, but you can disagree if – tell me if you disagree – but to deny an evidentiary hearing or any other kind of relief back when this was – this arose in late September? Sure. Third-party contact with a jury, a jury member, is presumed prejudicial unless the government can prove beyond a reasonable doubt that that contact did not impact the verdict. And so that showing was not made. That's a – you're saying that's the standard in the Ninth Circuit? The government has to prove beyond a reasonable doubt? Or clearly – What's your authority for that? It would be cited in the briefs, Your Honor. But let's skip – let's go further back in the process. Perhaps any third-party contact is presumed prejudicial, and perhaps this kind of language would be prejudicial. What kind of showing do you have to make that a third-party contact actually occurred? The questions Judge Baleson asked you – this is the only evidence of a third-party contact, an affidavit. No live – was a live – did somebody make a proffer to the judge that Ms. Lenach would be willing to testify? No, but at a hearing, we would have obviously subpoenaed her. Okay. But none of the other people who might have been present presented anything, and this was presented, what, four months after the jury verdict? I'm just trying to figure out why you think you met the threshold of establishing that a contact likely occurred so the judge could then proceed to an evidentiary hearing. Sure. Your Honor, once this issue is raised, it would be our view that the district court then needs to conduct proceedings to determine what occurred. And if it did occur, what the impact, if any, that was on the particular jury members. Am I correct that Ms. Chesney was represented by counsel after the verdict came in? That's correct. So – and his counsel had filed post-trial briefs, and then this affidavit was filed at one or about the time that the reply brief was filed. Is that correct? Yes, sir. So he did have a lawyer who could have pursued this by either getting an affidavit of Michelle Barton or showing why he couldn't get Michelle Barton or anything like that. Is that correct? He could have, but it's Mr. McChesney's position that the affidavit of Ms. Chesney was insufficient, that at that point a hearing should have occurred. Can you refresh my recollection of how this arose procedurally? Was there a motion for a new trial based on this? This was included within the motion for a new trial. Within the motion for a new trial. Were there requests to conduct discovery on this issue? There were not. And the motion for a new trial was denied in an order? That's correct. And the judge – I know the judge had some discussion about why he didn't credit this affidavit. I'm trying to figure out if there's anything else in this record that deals with this affidavit. Not that I recall, Your Honor. Within the motion for a new trial, I believe there was a request for a hearing, though, on this particular issue. No, I know that's there. There are also other issues, multiple issues. We have evidentiary issues. There are issues related to cross-examination of witnesses. The cross-examination of witnesses and confrontation rights, I believe, is a rather important issue in this context. The theory of the government's case was essentially that Mr. McChesney and Mr. Romero placed 136 firearms into the back of a suburban and then transported 136 firearms to California. They did this in a suburban, though, that included Mr. Romero, Lindsay Smith, two children, two to three large plastic totes of belongings. And Mr. McChesney was attempting to basically get at the logistical impossibility of the government's theory of the case in his cross-examination of Ms. Smith. And that was demonstrated by his attempt to cross-examine her on her statement about changing diapers, you know, kind of these routine events that occurred within this suburban. And the Court effectively cut him off. But this isn't a denial of confrontation rights, is it? What you're really saying is the Court abused its discretion in limiting questioning of a witness. I think that's true, but it isn't. He got ample opportunity to cross-examine this witness. You're just complaining that he wasn't allowed to pursue a particular course of questioning. Your Honor, if you cannot, it would be our position that if you cannot cross-examine a witness about diapers, possibly the most important issue in the case, then you basically have no confidence. He wasn't cross-examining the witness about the most important issue. He was certainly allowed to cross-examine the witness about her recollection of what went on and whether or not this could possibly occur. When he got to diapers, the judge said, in effect, I've had enough. I don't see how that's a denial of a confrontation right. Well, if you can't cross-examine a witness adequately. But let's get back. How long was this cross-examination of this witness? It wasn't unduly lengthy. No, no. But there are, it appears there are many pages. He gets to the end of it and says, I'm done. He was just prevented from pursuing one line of questioning. Isn't that what occurred here? It was probably the most important line of questioning in this case because it went directly to the impossibility of the government's theory of the case. But the line of questioning about the diapers was designed to show that the suburban was so small that it could not have carried all those passengers and at the same time allowed a changing of diapers. We all know that a suburban is an enormous vehicle. And I think he had enough opportunity to show there wasn't enough space in it. I think it's an inherently implausible line of questioning to say that the suburban was so small that it could not accommodate all those people, all that baggage, and a changing of diapers. And so far as he could make that, it seemed to me that he asked the questions. She answered. She said, I changed the diapers. I made do. You know, I'm a mom. What can I say? To some extent, I would. If she said, I've had three kids and I can handle all of them. Sure. I agree. You can change diapers and have four people and two plastic totes in a vehicle. You can't do that and have 136 boxed firearms in the same vehicle. That just doesn't work. Does the record support that argument? Was there any testimony about measuring the size of the suburban? There was not, but Mr. McChesney was not permitted to get into this line of questioning. I think common sense, I'm just kind of thinking about the typical suburban and 136 boxed firearms. Well, instead of asking about diapers, the question could have been, you know, how big, how much room was there in the back of the car? I mean, can we take judicial notice that a suburban is a large SUV? Sure. And I think you can also take judicial notice that 136 boxed firearms probably wouldn't fit into a suburban. They would not? You're saying they would not? Correct, sir. Well, it depends how big the boxes are. I mean, I'm not sure I agree with you. And the testimony in this matter showed that we're not talking small handguns. We're talking an assortment of rifles, handguns. Is there any evidence of the record how much space in the suburban was taken up with the firearms? No, there's not. One of the witnesses alleged that possibly she thought she saw them when they were in Salt Lake City. That's the limit, though. Thank you. And we've taken you over time. Let's hear from the government, and we'll give you a chance to respond. Thank you. Good morning. May it please the Court. My name is Megan DeShong, and I represent the United States. There are obviously quite a number of issues in this case, but I think we can simplify them. They really come down to two themes that permeate the entire case. First, despite Mr. Ball's protestations to the contrary, the district court bent over backwards, three different judges bent over backwards to protect Mr. McChesney's Sixth Amendment rights, to warn him again and again that he was not on the wisest course of action to say, Mr. Ball's right here. He can take over for you. Mr. McChesney, your trial strategies are not working outside the presence of the jury. Maybe you want to rethink this. He did have access to discovery. He had access to all these different resources. But as counsel said, he was committed to doing this by himself, in his own way, instead of taking advantage of the resources that were provided to him. Now, one of the complaints that's now being made is that because he was in the jail, that impeded him in various ways from acting as his own lawyer. And of course, it is difficult to be your own lawyer, not only because you don't know how to be a lawyer, but because you're in jail. If I were a lawyer and in jail, I think I'd want somebody representing me. Was he specifically warned as part of the colloquy, do you want to represent yourself, that it will be difficult not only because you don't know about the law, but because you will be incarcerated as you prepare for trial? Absolutely, Your Honor. I can't point you to a specific citation in the record, but I know at, I believe, both the March 21st Feretta hearing, and the April 17th Feretta hearing, and in the subsequent re-advisement that the court published in an order that I believe that our supplemental excerpts at page 74 to 76, the court said, you're not on equal footing here. There are more difficulties because you're incarcerated. You aren't going to have the same access. What I'm going to do is I'm going to give you- I'm looking at SER 075, the court's order actually has some reflection of that. Yes, Your Honor. Can I ask you a different question about the Feretta colloquies? Seems to me that the colloquy in this case, as opposed to the kidnapping case, was more truncated than it might have been because the judge said, I told you all this stuff a couple weeks ago, do you still remember it? Is that a sufficient Feretta colloquy? Yes, I think it is, Your Honor. Mr. McChesney had actually successfully represented himself in a prior habeas proceeding, the court was aware of that. He'd had a thorough warning at the March 17th, or excuse me, the March 21st hearing. And the court actually asked him, Mr. McChesney, do you understand, do you remember everything we discussed? Do you want me to reread that? It's also addressed in that order that Your Honor just referenced. And I guess my question is, if you took that out, if you took out, do you remember everything we discussed and do you remember it? Is this colloquy sufficient standing without that to satisfy the Feretta requirements? I think, yes, it is, because you do have to look at the entire context of everything that Mr. McChesney was aware of, everything had been discussed before. And it's not my understanding that they're actually challenging the sufficiency of the Feretta warning itself, just everything that flowed after it, whether he was actually given the right, the ability to represent himself after he had unequivocally waived his rights, continued to say, yes, I want to represent myself, I absolutely want to represent myself. Even up to the time of trial, I believe the first day of trial, the court warned him again. I'm telling you again, there are a lot of problems here, Mr. McChesney, and he said he was, quote, 100 percent sure he wanted to represent himself. I just don't think there's ever really been a question raised that the Feretta warning itself was insufficient. As you might have determined from my previous question, I'm interested in the post-trial proceeding or the motion about the jury. Yes, Your Honor. Let me tell you what disturbs me about it and see if you can respond to that. The judge said, I don't find Ms. Linick credible, even though she wasn't in front of him, because, A, she doesn't say what day this occurred. And when I look at her affidavit, she says, I was present on the 8th through the 10th, on or about the 10th. So it's clearly some day, 8th, 9th, or 10th. It can't be the 11th, because she says those are the days I was present. And then he says, and she didn't say whether it was before or after the jury verdict, but the verdict was the 11th. So she pretty clearly indicated that whatever occurred, occurred beforehand. And then the judge said, and besides, court personnel would have heard this, without calling any court personnel and asking them whether they heard it. Isn't the judge making evidentiary findings without a hearing? If I would call them evidentiary findings, I would say that. Isn't somebody who's not credible an evidentiary finding? I certainly think he was making factual findings about the – whether the government had – or, excuse me, Mr. McChesney had met – and mind you, it's his initial burden, not the government's, to prove that something even happened. And then the judge said, I was present on the 8th through the 10th, on or about the 10th, or 10th, or 11th, or 12th, or 13th, or 14th, or 15th, or 16th, or 17th,  or 25th, or 26th, or 27th, or 28th, or 29th, or 29th, or 30th, or 30th, or 31st, or 30th, and so forth, that that would get closer to the initial standard that – But I guess that's really not an answer to my question. The question is if her affidavit is treated as true, for the moment, would the judge have been required here to do more than he did? I think perhaps he would have, Your Honor, but – So doesn't his ruling rest on his finding of lack of credibility? I think it does, and I think that's a finding that's subject to clear error review, is based on, I think, he may not have ever used the words judicial notice, but he can take judicial notice of the setup of his courtroom, of the setup of the courthouse, and the fact that Ms. Linnick's affidavit and what they were requesting as far as video surveillance and other things was simply not consistent, and based on – Consistent with what? Consistent with where they were asking for video surveillance of versus where she was saying she overheard the comments. Well, but put aside the question of video surveillance. She says, I heard this comment. There were jurors within earshot of this comment. The comment itself is one that it seems to me would be quite troublesome if jurors heard it. This man has a criminal past, et cetera. And the judge says, I don't think that happened because I don't find Ms. Linnick credible. He doesn't say why, but he does say why, and he makes two mistakes in saying why. And then he says, and besides, somebody else would have reported it to me. Is that a sufficient basis for rejecting the affidavit? How do we know somebody else would have reported it to him? Do we even know they were within earshot of this? I – yes. I think that is a sufficient basis for rejecting it. As I said before, the Court knows the setup of its courthouse. I believe her affidavit reflected that it was coming and going at the security area at the front, and where I believe he may not have had testimony from the court security officers, but he'd spoken to them or knew that there wasn't any report of problems. And I think the other point is here, incidental contact with a third party, this was not in any way a purposeful contact with a juror, if it even happened. So does it matter that it's not purposeful? If I stand in front of a – if I don't know that Judge Fletcher is a juror and I stand next to him and say, I happen to know the defendant in this case is guilty because he admitted it to me, would it matter that my contact was purposeful? I think it does matter, Your Honor. First, I don't think there's any even suggestion in Ms. Linnick's affidavit that Ms. McFerrin went up and talked to a juror and said, you know, you should convict him. It was more sort of passing hallway chatter. And in Tong v. Felker, which is, I believe, cited in our brief, it actually does say, de minimis contact, passing in the hallway. But the de minimis contact in those cases was actually passing in the hallway or saying hi or nodding to somebody. Can I just ask – I'm sorry. You said the – are you saying this – I'm just talking about this issue now, the alleged juror contact. You say the standard review is clear error or abuse of discretion or something else? I think the judge's findings here about Ms. Linnick's credibility, about what actually occurred, are subject to clear error. And I think in Keating it said that the – They're based on a paper record, are they not? They're not based on an evidentiary hearing. No, but if it's an affidavit, it's sworn and verified just like testimony would be in court. I thought there were some cases in the Ninth Circuit that a grant or denial of a post-trial evidentiary hearing is within the discretion of the court. Are you saying that does not apply in a case of juror contact? Oh, no. I'm saying the judge's findings are – should be reviewed for clear error. But it is discretionary whether to actually grant the hearing. I apologize. I didn't understand Your Honor's question. Go back to my prior question, because I'm not sure I – maybe you answered it and maybe I just missed it. If I assume that the contents of this affidavit are true, would the judge be abusing his discretion by not having an evidentiary hearing? No, Your Honor. I don't think so, because, again, it is discretionary. No, but I said it was discretionary. Why, if the contents of this affidavit are true, if Ms. McFerrin made these comments specified in front of jurors before the verdict came down, tell me why it wouldn't be an abuse of discretion for a judge not to inquire further? I think, Your Honor, because even the – even assuming Ms. Lennox's statements are true, those comments suggest passing de minimis contact that did not – was not directed at a juror, and then the jury is still presumed to follow instructions. The jury was instructed on multiple occasions. Anything you hear outside this courtroom is not evidence, unless they're sitting up here on the podium. You should only consider what you hear in here. Don't talk to anyone else. Don't listen to anything else. And we have to presume a jury is following its instructions. They were instructed that every time they left the courtroom, they were instructed at the beginning and end of the trial. So even if this de minimis contact happened where it was not directed at a specific juror, it was overhearing chatter in the hallway, it does not require a further evidentiary hearing. Now, Defendant's counsel made – he seemed to think there was no point in having an evidentiary hearing. At least that's the impression I got, because it's been two years. And I think – what I think he's saying is that if we find there was some violation, we have to order a new trial. But we'll ask him about that on rebuttal. But what is your position that if we feel there was some violation, do you think there should be a remand for an evidentiary hearing? Absolutely, Your Honor. Ms. Lennick is presumably – can still be located. And if she can't, he won't admit his burden. If she can't – although, as the Court mentioned to counsel, there could have been other investigation of this. The Court could have – or, excuse me, Defendant could have submitted an affidavit from Ms. Barton, could have submitted – could have called Krista McFerrin – asked to call Krista McFerrin to the stand and say, did you say these things? Never did that. Could have gotten an affidavit from the court security officers who were there. Could have done any number of other things. But frankly, Your Honor, I just don't – Wait a minute. You say could have called McFerrin to the stand. I don't think that's true, because I don't know that this took place – rather that this came to light while the proceedings were still going on. I mean, he's asking to bring her to the stand, and the district judge is saying, no, I'm not going to give you a hearing. He never even asked to call Krista McFerrin to the stand. I'm – what I'm saying, Your Honor, is they could have done any number of other things to bolster their claims, other than this sort of vague conclusory affidavit that was inconsistent with the other evidence the Court just knows about its courthouse, about what happened. Do you – does the record show or do you – can you make a representation that when the government – I don't know if you were personally involved in this case at that time. I was not. But when this was filed, did the government do anything or send an FBI agent or anyone else out to interview – locate this witness or interview her or anything like that? It was difficult to do much initially, Your Honor, because when the defendant filed – I mean, the answer is, I'm just not aware. Well, after September 28th. The – when the motion was filed, all the initial motion said was on information and belief. There was no identification of any witness. It wasn't until the reply was filed to my – I just – because I wasn't involved with it, I simply don't know what other steps the government took at that point. I think it was the government's position, as the Court ultimately found, that this was so vague and so sort of up in the air that it was hard to track down what happened here, and there was likely little, if anything, that happened. It was a de minimis contact, if it even occurred. I wanted to touch briefly on the discussions about cross-examination. And I think you see this throughout the record with all of Mr. McChesney's complaints about trial error, is it's one snippet, one tiny line out of what was otherwise 30 pages, maybe, of cross-examination of Lindsey Smith. One single question he takes issue with, as the Court correctly noted, that's not a Confrontation Clause issue. That's a discretionary – something well within the discretion of the district court judge to control a lengthy, somewhat rambling cross-examination. Mr. McChesney had extensive opportunity to cross-examine Ms. Smith and every other – every other witness. His cross-examination may not have been well advised at times, but he did have wide-ranging opportunity to cross-examine them. And I wanted to touch again just briefly on the Feretta issues or on the Sixth Amendment issues, the ability to do research. The Court gave him a lengthy list of materials that were provided to him, the statute and annotations, the jury instructions, rules of evidence and criminal procedure. Am I correct in reading the record that he also had access to stand-by counsel to get research materials? Absolutely. And I think stand-by counsel, now current counsel, makes the point a couple times, well, there was a contradiction. The Court was saying you don't have the right to have stand-by counsel do research, but then is telling stand-by counsel do work for you. That's not what happened. Stand-by counsel was serving as sort of a – in a ministerial role and a conduit. At the second Feretta hearing, for example, the Court says, here are all the materials I want to make sure you have, because you just don't have library access, in which there's no court that says that lack of full Lexis or Westlaw access is a violation of the Sixth Amendment. He says, but we're going to make sure your stand-by counsel can get stuff to you. You let him know if there's anything you're missing. We'll get it to you. The Court – and I forget what motion they were discussing – said, well, I have a recent order on that. If you want that, you have stand-by counsel get you a copy of that. The Court was doing everything it could to make sure that – to mitigate the fact that Mr. McChesney was in jail and didn't have the same access as an unincarcerated person was. That's why he had an investigator who, despite what the suggestion that there was an investigator retained, the Court notes in its – I believe it's its supplemental excerpts, maybe 110 through 112, I told you you could have an investigator. You never took the first step of submitting the investigator to me for approval. I gave you this other resource so you could interview witnesses. Ms. Barton, interviewing her the day of trial, that's too little, too late. He had access to her. He's on the same footing as any other attorney. And if any attorney said the day of trial, oh, Your Honor, I haven't – I haven't bothered in the last several months to interview this person who I think is a key witness, the Court would say, too bad, counsel, we're moving forward. So he was just on the same footing there as any other attorney. He'd had a long time to find a way to interview her. He simply hadn't, because he wanted to do it himself. He refused to make use of the resources that were provided to him. And along that, and along the issue of no private phone calls, I want to emphasize something I don't think is reflected as clearly in our brief as it might be. Mr. McChesney was a serious security risk. He had absconded to Mexico for two years, almost two years. And this is alluded to in the March Ferretti hearing, so we know the Court is aware of it. It's addressed more specifically in the PSR, I believe, at paragraph 56. He had assaulted a marshal on his way back to the United States, on his way back to Montana. Pretty severely assaulted a marshal, I think, and required multiple people to restrain him. And that's what was weighing in the Court's mind, and that's what's weighing in the detention facility's mind, that he's in solitary confinement. If you're going to take him out to meet with witnesses, if you're going to do anything else with him, he's a serious security risk. And in Milton, which is cited by the defendant in their brief, Milton says security considerations are an important thing to take into account when you're deciding what you're going to do with an incarcerated prisoner who's pro se. I think that was forming the backdrop of what the Court was doing here, doing everything it could to make sure Mr. McChesney was afforded his Sixth Amendment rights, but also protect the integrity of the process and protect the safety of everybody else involved. As for the rest of our issues, we will stand on our briefs unless the Court has any additional questions. Thank you. May I ask a question? Thank you. Let's put two minutes on the clock and see what happens. We'll make sure you get a chance to say whatever you need to say. All right. If we agree with you that the judge should have had an evidentiary hearing at that time, do I understand your position, it's now too late and therefore your client should get a total new trial? It would be exceedingly difficult to provide a meaningful investigation and presentation of a hearing into those matters due to the time, the lapse of time. But what relief are you asking for? A new trial, Your Honor. Would that be fair to the government? Because their witnesses, they've got to corral all their witnesses up and it's been two years for them as well. It's not fair for your client, but it's fair for the government to have to get the witnesses and put the trial on again. I think the right to a fair trial and Mr. McChesney's fundamental rights override those concerns. I have one more question. When did your client have actual counsel after the verdict? How soon after the verdict? Immediately. Immediately after the verdict. Like the same day? Yes, sir. And is there anything in the record that shows when that attorney knew about this illegal improper juror conduct? There's nothing in the record that would reflect that. He didn't mention it until it was, when he filed his opening brief, he made an oblique reference to it and then he was more specific when he filed the reply brief on September 27th. Yes, sir. The motion for new trial, that was filed within a matter of days of trial. It was brought up there and then it wouldn't be reflected in the record, but there was additional investigation that led up to the affidavit. Of the juror issue? Of the juror issue? Yes, sir. That resulted in contact. Does the record show why it took almost 80 days to get this affidavit from Julie Lenach? It does not. All right. Thank you. All right. I'm sorry. No, I wanted to, and this is a little strange because the affidavit is, of course, on the letterhead of your, on the letterhead of your firm, right? Okay. So I don't want anything that's not in the record, even though I know you may have personal knowledge of this. But I'm trying to figure, I'm trying to deal with your point that it would be difficult to reconstruct. Is there anything in the record that indicates that Miss Lenach is now unavailable? There's nothing to indicate she's available or unavailable. So if the judge were to have a hearing and listen to her and say, I think you're a bald-faced liar, that would pretty much end it, wouldn't it? There may be video recordings that are no longer available. Well, there may be or there may not be, but that's, that's not, the record doesn't reflect that. And that's the problem, Your Honor. At this point, we cannot go back and reconstruct what would have possibly been found. I'm not sure that's true. You said Miss Lenach can certainly say what she saw or didn't see or heard or didn't hear. I don't, I don't know that Miss McFerrin is available or unavailable. The record doesn't indicate that. Miss Barton is your client's sister. And my guess is that she's available. Why can't the judge and, and whatever court have personnel may or may not have been there that day, may or may not be available. You're asking us to assume unavailability of all these witnesses without any showing that they're not available. Yes, sir. And the basis of that is that our, our concern with the line of questions and the government's position is that there is some burden shifting going on. The burden is on the government to prove that these incidents did not impact the jury. Well, no. The initial burden is for you to demonstrate that these incidents actually occurred. And the judge quite reasonably expressed some skepticism about whether they occurred. The way a judge would normally determine whether they occurred is by listening to Miss Lenach and saying, I don't believe her. She's a liar. You haven't met your burden of demonstrating that the incident occurred. And so that's what, that's why I have difficulty accepting your argument that we, we can't put the, we can't do this over again. But I've said it. Let me, I want to ask another question if I may. Your, if, if, if we were to affirm the conviction, would it be appropriate, would it be grounds for a 2255 post-conviction petition that the newly retained lawyer should have seized upon this issue immediately and should have interviewed people, Krista McFerrin and Julie Lenach. I mean, any time a lawyer, if you were in the, any of us were in the middle of a trial and we learn about, learn about juror, improper juror conduct, we immediately go to the judge or the judge's clerk and say there's been something wrong here. This lawyer who you said was retained the day of the verdict, he didn't, he didn't, he didn't act from, from what we see. He didn't act diligently about it. At least that's a conclusion I could draw. Couldn't this issue be raised on a 2255 that he didn't move promptly enough and, and your client could get some relief or the judge could have an evidentiary hearing as part of a 2255 proceeding? I'm certain that he can raise the issue and perhaps he will. The concern, though, is that we're talking about separate and distinct issues here. And that Mr. McChesney did and counsel at that point did immediately, almost as immediately as they could within the motion for new trial, advise the court there's a big issue here. And at that point they did, and it won't be in the record what was done. He waited 80 days to file this affidavit. And I, I find that incomprehensible that a lawyer would wait so long for such a fundamental violation of someone's rights. And maybe there's an explanation for it. Do we know from the record at what point the lawyer learns from Lennox that she has this information or is willing to sign such an affidavit? It is not in the record. So we could infer that he learned it fast, but it's possible that he learned it two days before he submits the affidavit? It could be, Your Honor. We... So at this point, in this current state of the record, we simply don't know. We do not. We're not asking you to testify. I understand the uncomfortable nature of this. You were just asking what's in the record. Were you the lawyer who was retained? I was. You were? Yes, sir. Oh. We don't want you to testify, Your Honor. We'll just stick to what's in the record and what's not in the record. Got it. Okay. I think, I think that's it. Any more questions? Thank you. Thank you. Thank both sides for your arguments.
judges: Baylson, Fletcher, Hurwitz